UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DION K. HUMPHREY, | ) |
| Petitioner, | ) Case No. C05-1866-JCC-JPD |
| v. | ) |
| DOUG WADDINGTON, | ) REPORT & RECOMMENDATION |
| Respondent. | ) |

## INTRODUCTION

Petitioner Dion Humphrey was convicted in 2003 of second degree assault, possession of cocaine, and attempting to elude a police vehicle. He has finished serving a sentence of 62 months in prison. Before he was released, petitioner filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an answer and petitioner has filed a response. After considering the parties' submissions and the balance of the record, the court recommends that the petition be denied with prejudice.

## BACKGROUND

The Washington Court of Appeals summarized the facts in petitioner's case as follows:

> In the early morning hours of November 2, 2002, Seattle Police Officer Ben Hughey was in his patrol car, parked next to Officers Simon Edison and Jason Diamond in their patrol car in the parking lot of a Payless store on Rainier Avenue South in Seattle, Washington. The drivers' doors were facing each other so the officers could converse.
>
> The officers saw a vehicle run a red light while it was traveling in excess of 70 miles per hour down Rainer Avenue South. The driver, Dion Humphrey, made an abrupt turn into the parking lot where the two patrol

REPORT & RECOMMENDATION
PAGE 1

cars were parked. Humphrey's car then accelerated directly toward the patrol cars. The officers managed to move their patrol cars enough so that Humphrey's car narrowly missed them. Humphrey's car went just behind Officer Hughey's patrol car, jumped the curb of the Payless store, traveled through some shrubbery, and went over a sidewalk onto Rainier Avenue South, traveling across all five lanes. The officers pursued Humphrey in their marked patrol cars with lights flashing and sirens activated. Humphrey continued for several blocks, and did not stop for the officers until his vehicle got stuck on top of a curb.

Officer Hughey ordered Humphrey out of the car, but Humphrey refused to comply and resisted arrest. It took several officers to get Humphrey under control and arrest him. Officer Tanya Kinney, who had been called to the scene, saw Humphrey spit an object from his mouth. Forensic testing revealed the item was crack cocaine.

The State charged Humphrey with one count each of second degree assault, possession of cocaine, and attempting to elude a police vehicle. After the jury was selected, but before opening statements, Humphrey made a motion to substitute counsel. The trial court denied his request. At trial, Humphrey testified that he felt depressed after viewing his deceased grandfather's body. Humphrey admitted to drinking alcohol, smoking marijuana, and smoking crack cocaine earlier that day and evening. He claimed that his passenger grabbed the steering wheel in the parking lot causing the car to point toward the officers as it accelerated. He also denied that he was attempting to elude the police officers and that he was in possession of crack cocaine at the time of his arrest.

A jury convicted Humphrey as charged. Prior to sentencing, Humphrey requested and received new counsel. New counsel requested and received a psychological evaluation for Humphrey. At sentencing, the new counsel reported no new evidence that would have constituted grounds for a new trial. The court sentenced Humphrey to 62 months.

*State of Washington v. Humphrey*, Unpublished opinion, 2004 WL 2526545 (Wash. App. 2004) (Doc. #39, Ex. 3 at 2-3).

Petitioner appealed to the Washington Court of Appeals, and also filed a personal restraint petition ("PRP"). The court consolidated the PRP with the appeal and denied both. (Doc. #39, Ex. 3). The court later modified its opinion slightly. (*Id.*, Ex. 10). Petitioner sought review by the Washington Supreme Court and that court denied review without comment. (*Id.*, Ex. 12). In addition, petitioner filed three other petitions which were construed as PRP's by the state court and denied. (*Id.*, Ex. 14, 24, 27).

On December 23, 2005, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. #8). After receiving two extensions of time, respondent filed an

REPORT & RECOMMENDATION
PAGE 2

answer, along with the state court record, on April 27, 2006.  (Doc. #36).  Petitioner filed a response to the answer on May 5, 2006 (Doc. #41).  On or about May 11, 2006, petitioner finished serving his sentence, was released, and moved back to Alaska.[1]  (Doc. #49).

The court granted petitioner an extension of time to file a supplemental response to respondent's answer, but petitioner has not done so.  (Doc. #44).  Instead, he has filed a motion to conduct discovery (Doc. #46), to which respondent has filed a response.  (Doc. #48).  The habeas petition and discovery motion are both now ready for review.

## GROUNDS FOR RELIEF

Petitioner sets forth the following grounds for relief in his habeas petition:

1. Denial of Effective Assistance of Counsel
2. Prosecutorial Misconduct
3. Confrontation Clause/Compulsory Process

(Doc. #8 at 5-8).

After stating the standard of review, the court will address each ground for relief in turn.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's adjudication is *contrary to*, or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d) (emphasis added).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the

---

[1] Petitioner's release from custody subsequent to his filing of the instant habeas petition does not render the petition moot.  *See Chacon v. Wood*, 36 F.3d 1459, 1462 (9th Cir. 1994).

REPORT & RECOMMENDATION
PAGE 3

correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* In addition, a habeas corpus petition may be granted if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)

In *Lockyer v. Andrade,* 538 U.S. 63 (2003), the Supreme Court examined the meaning of the phrase "unreasonable application of law" and corrected an earlier interpretation by the Ninth Circuit which had equated the term with the phrase "clear error." The Court explained:

> These two standards, however, are not the same. *The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness. It is not enough that a federal habeas court, in its "independent review of the legal question" is left with a "firm conviction" that the state court was "erroneous."* . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable.

538 U.S. at 68-69 (emphasis added; citations omitted). Thus, the Supreme Court has directed lower federal courts reviewing habeas petitions to be extremely deferential to decisions by state courts. A state court's decision may be overturned only if the application is "objectively unreasonable." 538 U.S. at 69.

DISCUSSION

Petitioner's First Ground for Relief: Ineffective Assistance of Counsel

In his first ground for relief, petitioner contends that his trial counsel provided ineffective assistance in three areas: (1) By failing to investigate and present a defense of diminished capacity; (2) by failing to request a jury instruction on the definition of "willfully"; and (3) by failing to object to certain comments made by the prosecutor in closing argument. (Doc. #8, Attached Memorandum at 1-4).

Claims of ineffectiveness of counsel are reviewed according to the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984). In order to prevail, petitioner must establish two elements: First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 687-88 (1984). Second, he must establish that he was

REPORT & RECOMMENDATION
PAGE 4

prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Regarding the first prong of the *Strickland* test, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* The test is not whether another lawyer, with the benefit of hindsight, would have acted differently, but whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 689.

In addition, the Supreme Court has stated that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "The object of an ineffective assistance claim is not to grade counsel's performance. If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

### A. Counsel's alleged failure to investigate and present a defense of diminished capacity

Petitioner first contends that counsel was ineffective because he failed to prepare or present a defense based upon a theory of diminished capacity. Under Washington law, a criminal defendant may present evidence that he suffers from "a mental condition not amounting to insanity which prevents [him] from forming the requisite mental state necessary to commit the crime charged." *State v. Warden*, 133 Wash. 2d 559, 564 (1997). However, such a defense is useful only if a defendant admits that he committed the acts charged, but denies that he had the requisite mental state. Here, petitioner denied, through his own testimony at trial, that he committed any of the acts with which he was charged. Thus, a diminished defense would have been incompatible with his sworn testimony and with the overall defense of denial that his counsel presented. Petitioner therefore fails to satisfy the "deficient performance" prong of the

REPORT & RECOMMENDATION
PAGE 5

*Strickland* standard.

In addition, petitioner fails to show that any prejudice resulted from counsel's allegedly deficient performance. After trial, petitioner was appointed new counsel who investigated petitioner's mental state. At sentencing, counsel told the court: "I appreciate the court giving us the opportunity to have Mr. Humphrey evaluated. I've reviewed the evaluation with Mr. Humphrey, and I don't believe that it supported our position that we thought we were going to be able to address this court on." (Doc. #39, Ex. 35 at 4). Thus, the record does not reveal any evidence that a diminished capacity defense would have been viable had counsel sought to present it. Petitioner consequently does not satisfy the "prejudice prong" of the *Strickland* standard either. Accordingly, the decision by the Washington Court of Appeals rejecting this claim is not objectively unreasonable and petitioner's first claim should be denied.

<u>B. Counsel's alleged failure to request a jury instruction on the definition of "willfully"</u>

Petitioner next contends that trial counsel was ineffective because he failed to request that the judge instruct the jury on the definition of "willfully," with respect to the charge of attempting to elude a police vehicle. The Washington statute under which petitioner was convicted makes it a felony to "willfully" fail to immediately bring a vehicle to a stop, after being warned by police officers. *See* RCW 46.61.024. Petitioner apparently believes that counsel should have requested that the jury be instructed that "[a] person acts willfully when he or she acts knowingly." (Doc. #39, Ex. 3 at 7 n.13, *quoting* WPIC 10.05).

However, it is not clear that had petitioner requested such an instruction, it would have helped his cause. As the Washington Court of Appeals noted, under Washington law "knowledge requires a lesser mental state than intent," and counsel may have therefore rejected the instruction because counsel determined that it "actually could have lowered the threshold level of volition required to support the charge of eluding police officers." (*Id*. at 7). Thus, petitioner cannot show that any prejudice resulted from counsel's failure to request the instruction. Accordingly, the state court decision rejecting this claim is not objectively

REPORT & RECOMMENDATION
PAGE 6

unreasonable, and petitioner's second claim that counsel was ineffective should be denied.

### C.  Counsel's alleged failure to object to comments made by the prosecutor

Petitioner's final claim of ineffective assistance is that counsel was ineffective because counsel failed to object to certain comments made by the prosecutor in closing argument. Petitioner also cites these comments as the basis for his second ground for relief based upon prosecutorial misconduct.  As discussed below, because the court concludes that these comments, while inappropriate, did not amount to a denial of due process, petitioner does not show that counsel's failure to object caused him prejudice.  Therefore, the state court decision rejecting petitioner's third and final claim that counsel was ineffective is not objectively unreasonable, and the claim should be denied.

### Petitioner's Second Ground for Relief: Prosecutorial Misconduct

Petitioner next argues that the prosecutor made improper comments during closing argument which deprived petitioner of a fair trial.  In order to prevail on a claim of prosecutorial misconduct, petitioner must show that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Thus, "the appropriate standard of review for such a claim on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (Quotation and citation omitted).

The first comment cited by petitioner as improper was a reference by the prosecutor to the bombing in Oklahoma City by Timothy McVeigh.  In attempting to illustrate the concept of "transferred intent," the prosecutor said the following:

> I don't want to compare anything in our lives that we have experienced to Oklahoma City.  But as an example, if you blow up a building because you want to send a message to someone, or let's say there is a federal agent inside that building that you really want to see dead, you have an intent to do an act to maybe harm one person or maybe send a message, whatever.  Timothy [McVeigh] is fully responsible for all 168 deaths.
>
> We focus on the act, its intention. It is the act that caused some harm. It's an attack, that's what you focus on. In this case, I don't have to prove that Dion Humphrey knew Officer Hughey and Edison and Officer Diamond were nearby.  I don't have to prove he knew they were there or that he even knew there were three

REPORT & RECOMMENDATION
PAGE 7

officers there. He did an intentional act with a deadly weapon (Doc. #39, Ex. 33 at 9-10).

The court agrees with the Washington Court of Appeals that this reference to the Oklahoma City bombing reflects poor judgment on the part of the prosecutor. (Doc. #39, Ex. 3 at 14). However, as the state court noted, the prosecutor did not directly compare petitioner to McVeigh. In addition, the evidence against petitioner – including the eyewitness testimony of four police officers – was ample to convict petitioner independent of the prosecutor's comment. Therefore, petitioner does not show that this comment deprived him of due process and this claim should be denied.

Petitioner next contends that a second comment by the prosecutor related to terrorism also violated his right to a fair trial. During rebuttal of the defense's closing argument, the prosecutor stated that petitioner's car "became a missile like airplanes on 9/11. I am not trying to draw parallels to the severity of the act. Of course, a weapon is a weapon nonetheless. The car is weapon." (Doc. #39, Ex. 33 at 36).

Again, the court agrees with the Washington Court of Appeals that this reference to the 9/11 terrorist attack reflects extremely poor judgment on the part of the prosecutor. (Doc. #39, Ex. 3 at 14). However, again, viewed against the totality of the evidence, the comment did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. Accordingly, petitioner does not meet the standard for habeas relief and this claim should be denied.

Petitioner's final claim of prosecutorial misconduct is based upon the prosecutor's statement to the jury that they had not "been given a reason to doubt [petitioner] is guilty of assault in the second degree for trying to hit those officers, for attempting to elude or for possession of cocaine. He simply is guilty." (Doc. #39, Ex. 33 at 22). Petitioner argues that this comment impermissibly shifted the burden of proof from the prosecution to the petitioner.

This comment occurred as the prosecutor summed up his case and attempted to show the weaknesses in petitioner's defense. Viewed in this context, the comment is more an attack on petitioner's defense than an attempt to shift the burden of proof. Therefore, petitioner's

REPORT & RECOMMENDATION
PAGE 8

contention that the comment violated due process is unavailing and this final claim of prosecutorial misconduct should be denied.[2]

### Petitioner's Third Ground for Relief: Confrontation Clause/Compulsory Process

In his final ground for relief, petitioner appears to argue that his right to confront witnesses against him and his right to present witnesses in his own defense, were violated by his trial counsel and the prosecutor. The ground for relief is thus a hodge-podge of claims based upon the right to effective assistance of counsel and the right to confront witnesses, both guaranteed by the Sixth Amendment.

Respondent argues that petitioner failed to exhaust this third ground for relief in state court and that it is now barred from review in federal court. While respondent concedes that petitioner "raised some similar claims in various personal restraint petitions," respondent argues that petitioner failed to link those claims to federal law and consequently did not fairly present them to the state court. (Doc. #37 at 17-18).

The court finds that the exhaustion question need not be resolved because petitioner's claims may be denied as meritless. *See* 28 U.S.C. § 2254(b)(2). Listed below and discussed briefly are the various witnesses whose testimony, or lack thereof, form the basis of petitioner's third ground for relief:

A. Kenny Smith[3]

Petitioner contends that trial counsel failed to subpoena a witness named Kenny Smith,

---

[2] In addition, petitioner argues that the prosecutor's use of the above analogies to the Oklahoma City bombing and 9/11 were improper because the prosecutor was arguing "facts not in evidence." (Doc. #8, Attachment at 7). However, as noted, the prosecutor was merely making analogies and was not pointing to these events as facts that supported petitioner's conviction. Petitioner applies this same argument to comments by the prosecutor that, in effect, he had seen petitioner's defense of general denial frequently in other criminal trials. Again, contrary to petitioner's assertion, these comments were not attempts to convince the jury based upon facts not in evidence, but rather were attempts to reveal weaknesses in petitioner's defense by analogizing to other situations.

[3] Petitioner refers to Mr. Smith as "Kenny Smith" in his habeas petition (Doc. #8) but later refers to him as "Fred Smith" in his motion to conduct discovery. (Doc. #46). For the sake of simplicity, the court will refer to the witness as "Kenny Smith."

REPORT & RECOMMENDATION
PAGE 9

who was a passenger in the car with petitioner on the night of petitioner's arrest. Petitioner asserts that Smith provided a statement to the police which was "used for the purpose of the police investigation being testimonial evidence evidence [sic] towards [petitioner] by the state prosecutor." (Doc. #8, Attachment at 11). Petitioner argues that he should have had an opportunity to "cross-examine" Smith in front of the jury. (*Id.*)

However, there is no evidence in the record that either Smith or his written statement were used against petitioner at his trial. In fact, petitioner's own counsel stated to the jury that "[w]e don't know what happened to the passenger." (Doc. #39, Ex. 33 at 25). Nor is there any evidence that Smith, had he testified, would have corroborated petitioner's testimony that Smith had grabbed the steering wheel and directed the car towards the police cars. Thus, there is simply no basis in the record for petitioner's claim that his rights were violated by the use of, or absence of, Smith's presence at trial. In addition, for this reason, petitioner's motion for discovery, seeking a copy of the statement Smith gave to police (Doc. #46), should be denied.

### B. Emergency Room Physician

Petitioner asserts that following his arrest, he was transported to Harborview Hospital, where he stayed for three days. (Doc. #8, Attachment at 11). He further asserts that he was denied "evidence" to this effect and the right to present testimony of the physician who treated him at Harborview. (*Id.* at 12). However, petitioner fails to state how this evidence or testimony would have helped his defense. Thus, petitioner does not show any prejudice resulting from this omission and the claim may be summarily denied. *See Strickland*, 466 U.S. at 694.

### C. Becky Brown

Petitioner asserts that Becky Brown, his employer in Alaska, should have been called to testify by his defense counsel, because Ms. Brown could have testified as to petitioner's state of mind following his grandfather's death. (Doc. #8, Attachment at 12). Petitioner appears to argue that Ms. Brown's testimony would have corroborated his own testimony that his behavior on the night of his arrest was heavily influenced by his depression over his grandfather's death.

This claim may be summarily denied because petitioner offers no evidence that Ms.

Brown would have testified in accordance with petitioner's assertion.  In addition, even if she had so testified, it is not clear that such testimony would have resulted in a different verdict.  Thus, petitioner does not show any prejudice resulting from this omission.

### D.  Social Security Administration (SSA)

Petitioner next argues that his counsel should have asked someone from the SSA to testify at trial regarding petitioner's diagnosis of post-traumatic stress disorder.  However, petitioner does not produce any evidence that the SSA, in fact, has records to support that diagnosis, nor is it clear, given the weight of the evidence against petitioner, that testimony to that effect would have resulted in a different verdict.  Thus, petitioner does not show any prejudice resulting from this omission.

### E.  Dr. Robert Saari

After the trial court granted petitioner's request for new counsel to represent him at sentencing, new counsel obtained a psychological evaluation of petitioner by Dr. Robert Saari.  Petitioner's final claim regarding witnesses is that he "was denied evidence by Dr. Saari in his favor." (Doc. #8, Attachment at 14).

Petitioner's claim that Dr. Saari's testimony would have been helpful is belied by the record, which shows that petitioner's counsel at sentencing stated that Dr. Saari's evaluation did not support their position. (Doc. #39, Ex. 35 at 4).  In addition, the evaluation itself, which is included as an appendix to one of the exhibits in the state court record, states: "Although Mr. Humphrey did report symptoms consistent with a Posttraumtic Stress Disorder and a Major Depressive Disorder, his current symptom report did not provide evidence sufficient to warrant a diagnosis of either of these disorders.  *Therefore, these disorders should be ruled out*." (Doc. #39, Ex. 6, Appendix A at 4) (emphasis added).

Therefore, petitioner does not show any prejudice resulting from counsel's failure to call Dr. Saari as a witness, and this final claim should be denied.

REPORT & RECOMMENDATION
PAGE 11

## CONCLUSION

For the foregoing reasons, petitioner's petition for a writ of habeas corpus should be denied with prejudice. A proposed Order reflecting this recommendation is attached.

DATED this 31st day of July, 2006.

JAMES P. DONOHUE
United States Magistrate Judge